## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMIE ALAN BAILEY | ) | Case No. 09-2564 |
| | ) | |
| Debtor. | ) | |

### MEMORANDUM OPINION

Shannan Davant requests that this court dismiss the Chapter 13 bankruptcy petition of Jamie Alan Bailey (the "Debtor") on the grounds that he filed his bankruptcy petition in bad faith – namely for the non-economic purpose of harassing her, causing her increased attorney's fees, and to circumvent the rulings of the Family Court of Taylor County.[1]

For the reasons stated herein, the court will deny the motion.

### I. BACKGROUND

Ms. Davant and the Debtor have two minor children. One of the children is autistic, with special medical needs, and a special diet. Ms. Davant and the Debtor obtained a divorce from the Family Court of Taylor County on April 10, 2009. Ms. Davant has primary custody of the children, and the Debtor has visitation rights.

In 2007, Ms. Davant and the Debtor's martial home had an appraised value of $239,000. At the time of the parties' April 10, 2009 divorce decree, the secured debt against the marital home was about $185,000, and the Family Court of Taylor County awarded Ms. Davant one-half of the equity in the marital home – $27,000. The Debtor was ordered to pay Ms. Davant her one-half interest in

---

[1] The court held a hearing on Ms. Davant's motion to dismiss on September 16, 2010, in Clarksburg, West Virginia, at which time the court heard testimony and received evidence. Ms. Davant appeared *pro se*, and the Debtor appeared with counsel.

1

cash. In addition, the Debtor was ordered to pay Ms. Davant $500 monthly until she remarried,[2] pay Ms. Davant's attorney $15,525 in fees, and provide medical and dental care for their two children. One of the medical support obligations of the Debtor is to pay a $2,500 debt owed to the Center for Autism Related Disorders. The Debtor was also ordered to pay $1,431 monthly for child support. As of the September 16, 2010 hearing the Debtor testified that he was current on his monthly child support payments, maintained medical insurance for his children through a payroll deduction, and had made most of the children's co-pays for medical services.

The Debtor appealed the Family Court's April 10, 2009 decree to the Circuit Court of Taylor County, but that appeal was denied on June 15, 2009. Following a August 5, 2009 hearing on a contempt motion filed by Ms. Davant for non-payment of her equity interest and attorney's fees, she was specifically awarded authority to place a lien on the formal marital home. The judgment was for $42,525, plus $2,000 in additional attorney's fees.

In August 2009, the Debtor attempted to refinance the former marital home in an effort to pay Ms. Davant her one-half interest. Based on the amount of the outstanding indebtedness and the additional money needed to pay Ms. Davant her equity interest and attorney's fees, the Debtor stated that he was unable to obtain a refinance loan. The Debtor has since attempted to sell the martial home, but the last offer was only for $190,000, which (not accounting for realtor fees and costs) may be enough to satisfy the secured debt, but not enough to pay Ms. Davant what is owed. In lieu of a refinance or sale of the home, the Debtor offered to give Ms. Davant the home, but she declined on the grounds that she was already living elsewhere and wanted the money instead. Currently, neither the Debtor nor Ms. Davant live in the former marital home.

Having received no payment from the Debtor with regard to his $44,525 obligation to her, Ms. Davant filed a second petition for contempt on October 22, 2009. The hearing on the contempt motion was set for November 19, 2009; however, on November 10, 2009, the Debtor filed a Chapter 13 bankruptcy petition, which stayed the contempt hearing.

Although the Debtor only listed abut $5,800 in credit card debt when the parties obtained

---

[2] No evidence or testimony was adduced regarding whether the Debtor had made the $500 monthly payments to Ms. Davant, or whether he was ever delinquent on that monthly obligation. Although the parties did not address the topic, it appears that Ms. Davant had remarried before the September 16, 2010 hearing.

their April 10, 2009 divorce, by the time the Debtor filed bankruptcy on November 10, 2009, he claimed to have $121,454 in unsecured debts, including $47,429 in credit card debts. The remainder represents the Debtor's obligations for Ms. Davant's attorney's fees and her equitable interest in the former marital home.[3]

## II. DISCUSSION

When Ms. Davant filed this motion to dismiss, she alleged that the Debtor's purpose in filing bankruptcy was in furtherance of his non-economic motive that she "not see a dime" of the amounts owed to her from the orders of the Family Court of Taylor County. As she stated to the court, the Debtor's treatment of her has been "harassing and evil" – he had promised to destroy her and her family, and his bankruptcy filing is another step in making good on his promise. Under the totality of the circumstances of this case, Ms. Davant claims that the Debtor is not deserving of bankruptcy protection. *See, e.g.*, *In re Kestell*, 99 F.3d 146, 150 (4th Cir. 1999) ("[T]he sole purpose of the filing was to avoid the payment of the sums owing to his ex-wife on account of the state court judgments. . . . [T]he Bankruptcy Code cannot be used as a vehicle for advancing personal antagonisms against an ex-spouse."); *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829, 832-33 (8th Cir. 1994) ("C. Huckfeldt filed a Chapter 7 petition to frustrate the divorce court decree and to push his ex-wife into bankruptcy. He then manipulated his immediate earnings to ensure that the Chapter 7 proceeding would achieve these non-economic motives. . . . . [S]uch conduct has long been considered unworthy of bankruptcy protection.").

As stated by the United States Supreme Court, "[t]he principal purpose of the Bankruptcy

---

[3] Specifically, the Debtor listed: (1) a $25,000 potential attorney fee claim in favor of Douglas Cornelius, Ms. Davant's family law attorney, that is contingent, unliquidated and disputed; (2) a $2,000 lien for attorney fee award in favor of Ms. Davant; (3) a $15,525 lien for attorney fee award in favor of Ms. Davant; (4) a $27,000 equitable distribution of property claim in favor of Ms. Davant; and (5) a $2,000 potential attorney fee claim in favor of Tom Dyer, who had defended Ms. Davant against criminal charges initiated by the Debtor. Excepting credit card obligations, the only other debt listed by the Debtor was $2,500 owed to the Center for Autism Related Disorders, which the Family Court has determined to be medical child support, and which the Debtor stated he intended to pay.

The $25,000, potential attorney fee claim in favor of Mr. Cornelius, and the $2,000 potential attorney fee claim in favor of Tom Dyer were deleted by the Debtor on an amended Schedule F, filed on April 2, 2010.

Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2009) (citation omitted). Under 11 U.S.C. § 1307(c), a court may convert or dismiss a Chapter 13 bankruptcy case for "cause." In determining whether "cause" is present to dismiss or convert, the court may consider whether a debtor filed the Chapter 13 bankruptcy petition in bad faith. *E.g.*, *Marrama*, 549 U.S. at 379 (2009) ("Under § 1307(c), a Chapter 13 proceeding may be dismissed or converted to Chapter 7 'for cause.' One such 'cause' recognized by bankruptcy courts is 'bad faith.'"); *Kestell*, 99 F.3d at 149 ("[T]he Bankruptcy Code, both in general structure and in specific provisions, authorizes bankruptcy courts to prevent the use of the bankruptcy process to achieve illicit objectives."); *Carolin Corp. v. Miller*, 886 F.2d 693, 698 (4th Cir. 1989) (finding that a good faith requirement to filing a bankruptcy petition is implicit in the Bankruptcy Code).

In determining if bad faith is present, the court is to consider the totality of the circumstances, focusing on "the fairness involved in the initiation of Chapter 13 bankruptcy proceedings . . . ." *In re Love*, 957 F.2d 1350, 1355, 1360 (7th Cir. 1992). The court should consider both "objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose that was not in line with the spirit of the Bankruptcy Code . . . ." *Love*, 957 F.2d at 1357; *see also Marrama*, 549 U.S. at 375 n.11 (stating that conduct sufficient to constitute bad faith under § 1307(c) "must, in fact, be atypical" and is limited to extraordinary cases). The moving party under 11 U.S.C. § 1307(c) bears the burden of proof, and a court should be "reluctant to dismiss a petition under Section 1307(c) for lack of good faith." *Love*, at 1355-56.

Here, the Debtor had annual income of $109,461.82 in 2009. On a monthly basis, the Debtor has gross income of $9,160 and after payroll deductions and insurance costs, net monthly income of $6,428. As of the April 10, 2009 divorce decree, he had about $5,800 in credit card debt, but as of the time of his November 10, 2009 bankruptcy petition, his credit card debt increased to $47,429, and his total unsecured debt increased to $121,454. After the entry of the parties divorce decree, the Debtor also incurred a debt secured by the marital residence to Citibank in the amount of $6,212. Although the Debtor's Schedule F lists attorney's fee claims payable on behalf of Ms. Davant, no amount is listed as being owed to the Debtor's family law attorney.

As the Debtor testified, his decision to file bankruptcy followed three months of "being in the red." He had to pay $1,431 a month in child support, $1,300 a month for the mortgage on the

4

parties former marital home, and about $1,300 in monthly credit card payments.  These expenses were in addition to his current $900 rent or home mortgage expense, $568 in monthly utilities, $344 car payment, a modest monthly food allowance of $285, and $265 in monthly gasoline expense. These payments alone total $6,393 on a monthly basis – exceeding the Debtor's net income – thus, the Debtor had no monthly income to pay his other living expenses, such as monthly medical and dental bills of $939, clothing expenses of $86, auto insurance of $138, or for other miscellaneous items.

In addition, the Debtor had to pay his own attorney's fees, Ms. Davant's attorney's fees, and Ms. Davant's equity interest in the former marital home.  Although the Debtor attempted to refinance the former marital home and/or sell it, he was not successful.  The Debtor's financial difficulties are a direct result of the expenses associated with the parties' divorce proceeding, and with the Debtor's decision to move from the former marital home and establish a new residence. The Debtor testified that by October 2009, he had maxed out his credit cards and had consulted with a financial professional who advised him that bankruptcy was his only real option.  The Debtor testified that it was embarrassing for him to go through the bankruptcy process, especially considering his belief that a bankruptcy filing could negatively impact his continued employment as a government contractor.  The court found the Debtor's testimony in this regard to be credible, and further finds that the Debtor's decision to file bankruptcy was due, in the main, to his economic distress.

Of course, almost every bankruptcy filing has a negative impact on affected creditors.  For example, the Debtor's credit card providers are only estimated to receive 9% of their filed claims in the Debtor's proposed Chapter 13 plan.  Ms. Davant, however, as a recipient of a domestic support obligation and/or money owed in accordance with a divorce decree, is treated better under the Bankruptcy Code than ordinary unsecured creditors such as credit card providers.   Currently pending before the court is an adversary complaint filed by Ms. Davant to except the obligations owed to her from the Debtor's discharge pursuant to 11 U.S.C. §§ 523(a)(5) and (15).  In the event that Ms. Davant is successful in that action, the obligations owed to her will survive any bankruptcy discharge that the Debtor might obtain at the end of a successful Chapter 13 case.  Ms. Davant is also protected by the Bankruptcy Code in other ways.  For example, the Debtor cannot confirm a proposed Chapter 13 plan unless he is current on his post-petition, pre-confirmation domestic

support obligations, 11 U.S.C. § 1325(a)(8), and cannot obtain a Chapter 13 discharge at the end of his confirmed Chapter 13 plan unless he is current on his post-confirmation domestic support obligations. § 1328(a). The Debtor stated his intention at the hearing to pay his monthly child support obligation of $1,431, his children's medical and dental expenses, and expenses associated with his minor child's special diet.

Currently, the Debtor does not anticipate paying Ms. Davant any amount in his proposed Chapter 13 plan with respect to amounts due her for attorney's fees and for her one-half equity interest in their former marital home. In fact, the Debtor's plan proposes to surrender the former marital home to the secured creditor. Whether any equity from the anticipated foreclosure of the former marital home can be realized is unknown, but any such potential realization of equity would reduce the amount the Debtor owes to Ms. Davant under the decree of divorce and subsequent orders of the Family Court. Of course, if Ms. Davant is successful on her exception to discharge action, bankruptcy will not have provided the Debtor with relief of those obligations, and he will have to return to the Family Court of Taylor County to obtain any adjustment of his obligations to Ms. Davant.

Ms. Davant also asserts that the Debtor's bad faith is evident by his falsehoods in his bankruptcy petition and schedules. Ms. Davant asserts that the Debtor falsely listed their children as his dependents on Schedule I, his schedule of monthly income, falsely stated the value of the marital home to be $230,000,[4] and falsely stated the amount of the liens on the home as $238,212. In actuality, the parties' children are in the custody of Ms. Davant and the Debtor does not claim them as dependents on his tax returns. The value of the marital home was determined to be $239,000 by the Family Court, and the amount of the liens against the former marital home is $189,094, as reflected on an Amended Schedule D, filed by the Debtor on January 17, 2010. In total, the court does not find any misstatement on the Debtor's petition or schedules that would warrant – even in conjunction with the other circumstances of this case – a dismissal of the Debtor's petition as being filed in bad faith.

---

[4] At one point, Ms. Davant accused the Debtor of listing the value of the former marital home as $27,000. The court believes that Ms. Davant was looking at the Debtor's liquidation analysis attached to his Chapter 13 plan, provided pursuant to 11 U.S.C. § 1325(a)(4), wherein he claimed that the value of his equity interest in the former marital home was $27,000.

6

After hearing the testimony of both Ms. Davant and the Debtor, and receiving the parties evidence, the court finds that Ms. Davant failed to prove her assertion that the Debtor's bankruptcy filing was in bad faith, in furtherance of his personal antagonisms and non-economic motives. While the parties' divorce had a severe economic impact on the Debtor (and likely Ms. Davant), the Debtor has managed to remain current on the payment of his monthly child support obligations, and although some medical expenses went unpaid for a period of time, the Debtor has, in the main, paid for his children's medical and dental expenses. The only substantial unpaid obligation is the payment of Ms. Davant's one-half equity interest in the former marital home, and her attorney's fees incurred in the divorce proceeding. Based on the Debtor's credible testimony, he made a good faith attempt to refinance and/or sell the former marital home before filing his bankruptcy petition, and, to this day, continues to try to effect a sale before the former marital home goes to foreclosure.

While the court believes that the Debtor and Ms. Davant have an acrimonious relationship, and that the parties likely harbor ill-will toward each other, which has manifested itself in certain unsavory events and words, the court cannot find objective evidence of an unfair result in the Debtor's decision to file bankruptcy. The Debtor's decision to file bankruptcy was based on economic hardship and the evidence does not support a finding that his sole purpose in filing for bankruptcy is to avoid paying the sums due Ms. Davant, or to frustrate the decrees of the Family Court. Likewise, the court cannot find that the Debtor's decision to file bankruptcy was the result of a subjective, illicit, non-economic purpose of harassing Ms. Davant, causing her to pay needless attorney's fees, or to circumvent the rulings of the Family Court of Taylor County. The evidence does not support a finding that the Debtor has manipulated his financial circumstances to achieve such a non-economic purpose.

### III. CONCLUSION

The court will enter a separate order that denies Ms. Davant's motion to dismiss the Debtor's bankruptcy filing.